2020 IL App (1st) 172808

No. 1-17-2808

Opinion filed September 29, 2020.

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 08111 |
| | ) | |
| DEANDRE MINKENS, | ) | The Honorable |
| | ) | Brian Flaherty, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Deandre Minkens was charged, along with his girlfriend, codefendant Shante

Thomas, with multiple counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)) and

intentional homicide of an unborn child (*id.* § 9-1.2(a)(1)) for his involvement in the death of

Rosemary Newman (the victim), who was pregnant allegedly with his child.[1] Following a

severed jury trial, defendant was found guilty of first degree murder and intentional homicide of

an unborn child and was then sentenced to natural life in prison without parole.

_____

[1]Codefendant is not a party to this appeal.

¶ 2     On direct appeal, defendant claims only that his trial counsel was ineffective for not moving to suppress his cell site location information, which was obtained without a warrant. Defendant maintains that the United States Supreme Court decision in *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2018), which held that law enforcement's collection of cell site location information is a "search" under the fourth amendment, supports his claim, even though *Carpenter* had not yet been decided at the time of his suppression hearing or his trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     For the sake of brevity, we recite only those facts necessary to the disposition of this appeal.

¶ 5     Before defendant's trial, the State moved, successfully, to retrieve data from two cell phones that were recovered during the execution of valid search warrants at defendant's residence and the detached garage, located at 329 156th Place in Calumet City. Illinois. Defendant subsequently moved to quash arrest and suppress evidence, asserting that no probable cause existed to justify his warrantless arrest because there was insufficient evidence that he had committed a crime. The trial court disagreed and denied his suppression motion after a hearing on August 26, 2014.

¶ 6     The case proceeded to trial on May 31, 2016. Briefly stated, the trial evidence generally showed that in the summer of 2010, defendant was in a relationship with codefendant when he began seeing the victim, who later became pregnant, presumably with his child. The victim's mother, Rosie Newman (Newman), testified that defendant was the father, stating she first met him when he arrived, albeit too late, for her daughter's ultrasound. When codefendant discovered defendant's involvement with the victim, however, she was none too pleased. Consequently, she

began threatening the victim, leading her to file a police report against codefendant the following year.

¶ 7     On April 23, 2011, the victim, then nine months pregnant, was living at her mother's apartment, located at 12255 South 44th Place in Alsip, Illinois. Around 10:30 p.m., she left to meet defendant outside. She took her mother's cell phone with her in case of an emergency. Defendant picked her up and then drove to Applebee's Restaurant less than two miles away, located at 4937 Cal Sag Road in Crestwood, Illinois. After they arrived, the victim called her mother, letting her know they made it to the restaurant safely and that she would be home soon. Yet, she never made it home.

¶ 8     The next morning, on Easter Sunday, defendant called Newman, asking to speak to the victim. Defendant claimed that he had been out with codefendant the prior night, not with the victim. Newman hung up and immediately called the police to file a missing person's report.

¶ 9     Shortly thereafter, Alsip Police Officers Joshua Spencer and Hector Puente arrived at Newman's apartment. She gave them defendant's phone number but their calls to him went unanswered. Newman also described her daughter the last time she ever saw her, stating she was wearing a green T-shirt and black pants and had red-tinted hair that was tightly braided. The officers entered the victim's information in the police database only to discover that she had previously reported being threatened by codefendant, as mentioned above (*supra* ¶ 6). Meanwhile, a body was found matching the victim's description less than three blocks away from defendant's home, in the Calumet City Forest Preserve.

¶ 10     Cook County Sheriff's Police Detective Scott Lefko testified that he and Detective Lawrence Rafferty were called to assist with the investigation of the body that was found and later identified as the victim. When they located the victim's body, she was lying facedown

wearing only a "green T-shirt, underwear and ankle socks." Detective Lefko observed injuries to the victim's mouth, nose, neck and back, as well as petechial hemorrhaging in her eyes "which is generally indicative of manual strangulation." His observations were ultimately confirmed by the victim's autopsy, which revealed that she suffered blunt force trauma to the head and died from strangulation. The detectives meanwhile obtained defendant and Newman's cell phone records from their phone providers.[2]

¶ 11     When defendant returned Officer Spencer's call later that afternoon, he claimed that he had not seen the victim in several days even though two Applebee's employees confirmed that defendant had been with her at the restaurant the night before. Nevertheless, defendant claimed that he had been at a night club known as "The Lick" in Harvey, Illinois, but surveillance video showed him more than 30 miles away from that club at a gas station near codefendant's residence in the North Side of Chicago. Defendant was arrested the next day.

¶ 12     During questioning, defendant eventually admitted that he went to Applebee's with the victim but claimed that his friend, Josh Miller, had also been with them. His claim, however, was belied by Miller's testimony, which revealed that defendant had asked Miller, who was not with him that night, to lie about his whereabouts in order to corroborate his story to the police.

¶ 13     Yet, defendant apparently told a different story to his cellmate, a jailhouse informant, whose testimony largely reflected that defendant took the victim to Applebee's the night she was killed while codefendant hid in the trunk of his car, which had an access panel to the backseat. At some point after they got back in the car, defendant turned up the radio volume, signaling codefendant, who then lunged through the access panel and strangled the victim while he

_____

[2]Newman's records were obtained because the victim was using her cell phone the night she was killed, as mentioned above (*supra* ¶ 7).

punched her in the stomach. After the victim stopped breathing, they dumped her body in the forest preserve and went to codefendant's home.

¶ 14    In support of that testimony, the State introduced forensic evidence of, among other things, the victim's fingernail clippings, containing "blood-like stains," recovered from defendant's car. The State also presented expert testimony from Federal Bureau of Investigation Special Agent Joseph Raschke, who analyzed defendant, codefendant and Newman's cell phone records to determine the location of their phones, also known as cell site location information, on the night in question. His testimony was consistent with the above-stated events.

¶ 15    The jury found defendant guilty of first degree murder and intentional homicide of an unborn child. The trial court subsequently denied defendant's motion for a new trial and then sentenced him to natural life in prison without parole. Although defendant refused to participate in the presentence investigation report, it was revealed that he had a lengthy criminal history, which included convictions for domestic battery, attempted burglary and cruelty to children.[3] In addition, defendant had been arrested for aggravated battery, robbery and domestic battery.

¶ 16    The trial court denied defendant's motion to reconsider his sentence, and he appealed.

¶ 17                                II. ANALYSIS

¶ 18    We review an ineffective assistance of counsel claim under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. Where, as here, a defendant's claim of ineffectiveness is based on counsel's failure to move for the suppression of evidence, he must demonstrate that (1) counsel's conduct was objectively unreasonable given the state of the law at the time the suppression motion would have been filed, and that (2) he was prejudiced as a result of that conduct. *Id.* ¶ 15; *People v. Herring*, 2018 IL

_____

[3]At defendant's sentencing hearing, the State presented nine witnesses, including an investigator from Gwinnett County, Georgia, who testified about defendant's prior conviction for cruelty to children.

App (1st) 152067, ¶ 93; see *Strickland*, 466 U.S. at 687. To establish prejudice in this regard, a defendant must show that the suppression motion would have been granted and that there is a reasonable probability the trial outcome would have been different had the evidence been suppressed. *Henderson*, 2013 IL 114040, ¶ 15. It is well settled that the failure to satisfy either prong of the *Strickland* standard defeats an ineffective assistance of counsel claim. *Id.* ¶ 11.

¶ 19    As stated, defendant claims that counsel was ineffective for not moving to suppress his cell site location information because that evidence was obtained without a warrant. In support of his claim, defendant relies on *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2217-21, where the United States Supreme Court held that a person has a legitimate expectation of privacy in his cell site location information records; thus, law enforcement's collection of that information is a "search" within the meaning of the fourth amendment.

¶ 20    Yet, that was not the law when defendant's case was pending in the trial court.[4] But *cf. People v. English*, 2013 IL 112890, ¶ 31 (noting there was existing law, albeit less, to support the defendant's postconviction argument at the time of his direct appeal). The United States Supreme Court decided *Carpenter* nearly four years after defendant's suppression hearing on August 26, 2014, and almost two years after he was tried and convicted. Therefore, defendant is essentially suggesting that we find counsel's failure to predict the future holding in *Carpenter* ineffective. For obvious reasons, we decline to do so. See *id.* ¶ 34; see also *People v. Weninger*, 292 Ill. App. 3d 340, 345 (1997).

¶ 21    Moreover, as defendant acknowledges, the State in this case obtained a pretrial court order allowing the police to retrieve data from the two phones it recovered during the execution

---

[4]During oral argument, defense counsel conceded that at the time of defendant's suppression hearing and his trial, the law did not require law enforcement to obtain a warrant in order to collect cell site location information.

of valid search warrants at his residence. *Cf. Riley v. California*, 573 U.S. 373, 386 (2014) (holding that the warrantless search of data on the defendant's cell phone was unlawful notwithstanding that the search was conducted incident to a lawful arrest). Defendant even concedes in his brief that the records obtained from his cell phone provider fell under the third-party exception to the warrant requirement but nonetheless argues that exception does not apply to cell site location information, as determined by the Supreme Court in *Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2221. This argument is clearly untenable.

¶ 22    Although defendant correctly points out that counsel could have moved to suppress his cell site location information before *Carpenter* was decided, he has not shown that counsel's failure to do so was objectively unreasonable. *Cf. United States v. Jones*, 565 U.S. 400 (2012) (suppressing evidence that was obtained through the warrantless and prolonged use of a GPS tracking device); *Riley*, 573 U.S. at 386 (similar). Because defendant has not satisfied the first prong of the *Strickland* standard, he cannot establish that counsel was ineffective in this case for not moving to suppress his cell site location information.

¶ 23    Even assuming that defendant had established the first prong, his claim fails under the prejudice prong of the *Strickland* standard. In other words, the suppression of defendant's cell site location information would not have changed the outcome of this case, given that the other evidence presented at trial, not to mention codefendant and Newman's cell site location information, could have established defendant's whereabouts that night. Regardless, defendant has not shown a reasonable probability of a different outcome had his cell site location information been suppressed. Furthermore, the evidence at trial overwhelmingly supported the jury's findings of guilt. We therefore reject his claim.

¶ 24                                    III. CONCLUSION

¶ 25    Based on the foregoing, we conclude that defendant has failed to show counsel was ineffective for not moving to suppress his cell site location information that was obtained without a warrant in this case. Accordingly, we affirm defendant's convictions and sentence.

¶ 26    Affirmed.

---

**No. 1-17-2808**

---

| | |
|---|---|
| **Cite as:** | *People v. Minkens*, 2020 IL App (1st) 172808 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-08111; the Hon. Brian Flaherty, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, Sharon Goott Nissim, and Sharifa Rahmany, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People. |

---